UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re St. Jude Medical Inc. Securities Litigation | Case No. 10-cv-0851 (SRN/TNL)<br><br>MEMORANDUM OPINION AND ORDER |

Dennis J. Herman, Luke O. Brooks, Matthew S. Melamed, Armen Zohrabian, and Ekaterini M. Polychronopoulos, Robbins Geller Rudman & Dowd LLP, Post Montgomery Center, One Montgomery Street, Suite 1800, San Francisco, CA 94104; Daniel S. Drosman and X. Jay Alvarez, Robbins Geller Rudman & Dowd LLP, 655 West Broadway, Suite 1900, San Diego, CA 92101; and Carolyn G. Anderson and Brian C. Gudmundson, Zimmerman Reed, P.L.L.P., 1100 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, for Plaintiffs.

James K. Langdon, Michelle S. Grant, and Jaime Stilson, Dorsey & Whitney LLP, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402, for Defendants.

SUSAN RICHARD NELSON, United States District Court Judge

This matter is before the Court on Defendants' Motion for Leave to File Motion to Decertify the Class [Doc. No. 373]. For the reasons set forth below, Defendants' Motion is denied.

**I.      BACKGROUND**

**A.      Plaintiffs' Claims**

In this securities fraud action, Lead Plaintiff Building Trades United Pension Trust Fund and Plaintiff City of Taylor Police and Fire Retirement System claim that Defendant St. Jude Medical, Inc. ("STJ"), and four of its officers—Defendant Daniel J. Starks, Defendant John C. Heinmiller, Defendant Eric S. Fain, and Defendant Michael T.

1

Rousseau (collectively, the "Individual Defendants")—violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(b), and the Securities Exchange Commission's Rule 10b-5, 17 C.F.R. § 240.10b-5.  In Count I, Plaintiffs assert a claim under Section 10(b) and Rule 10b-5 against all Defendants, alleging that Defendants made false statements of material fact that deceived Plaintiffs.  (Consolidated and Amended Class Action Complaint [Doc. No. 23] ("Complaint") ¶¶ 189–93.)  In Count II, Plaintiffs assert a derivative claim under Section 20(a) against all Defendants, alleging that they were liable as "control persons" under the Exchange Act.  (Id. ¶¶ 194–95.)  At its core, the Complaint is premised largely on alleged misrepresentations about STJ's true growth and market share in the cardiac rhythm management device market—allegedly masked by STJ's alleged practice of "channel stuffing," that is, seeking or pressuring its customers to acquire large quantities of STJ's products at the end of a financial quarter so as to artificially inflate STJ's revenues and earnings for a particular quarter, and STJ's accounting for such sales.  According to Plaintiffs, Defendants' fraud first materialized and manifested itself when STJ's stock price dropped on October 6, 2009 after STJ announced that it had missed its 3Q09 earnings.[1]

On October 15, 2010, Defendants moved to dismiss the Complaint, claiming that the allegations failed to satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act of 1985, Pub. L. 104-67, 109 Stat. 743, 758 (codified at 15 U.S.C. § 78u-4), with respect to the identification of false or misleading statements

---

[1]   For purposes of this Memorandum Opinion and Order, "3Q09" refers to "third-quarter 2009," and "2Q09" refers to "second-quarter 2009."

2

and the requisite state of mind, and that Plaintiffs failed to adequately plead loss causation.  On December 23, 2011, this Court granted Defendants' motion only to the extent that it sought dismissal of Count I with respect to Defendants Fain and Rousseau. In re St. Jude Med., Inc. Sec. Litig., 836 F. Supp. 2d 878, 912 (D. Minn. 2011).

### B. Plaintiffs' Motion for Class Certification

On August 31, 2012, Plaintiffs filed a motion to certify this action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.  (Mot. to Certify Class [Doc. No. 74] at 2.)  Defendants stipulated to certification on those grounds. (Defs.' Mem. in Resp. to Pls.' Mot. to Certify Class [Doc. No. 80] at 2.)  Accordingly, on October 25, 2012, the Court certified the following class:

> All persons who purchased or otherwise acquired the publicly traded securities of St. Jude Medical, Inc. between April 22, 2009 and October 6, 2009,[2] inclusive. Excluded from the Class are: (i) defendant St. Jude Medical, Inc., its parents, subsidiaries, and any other entity owned or controlled by St. Jude Medical, Inc.; (ii) defendants Daniel J. Starks, John C. Heinmiller, Eric S. Fain, and Michael T. Rousseau; (iii) all other executive officers and directors of St. Jude Medical, Inc., or of any of its parents, subsidiaries, or other entities owned or controlled by St. Jude Medical, Inc.; (iv) all immediate family members of the foregoing individuals, including grandparents, parents, spouses, siblings, children, grandchildren, and step-relations of similar degree; and (v) all predecessors and successors in interest or assigns of any of the foregoing.

(Order dated Oct. 25, 2012 [Doc. No. 86] at 3.)

---

[2]  October 6, 2009 is the date on which STJ announced that revenues and earnings for the third quarter of 2009 were expected to be lower than what Defendants had forecast.  (See Declaration of Michelle Grant dated Oct. 15, 2013 [Doc. No. 177] ("Grant Decl."), Ex. 40.)

3

### C.     Defendants' Motion for Summary Judgment

Defendants moved for summary judgment on October 15, 2013. Defendants' motion was premised on a purported lack of evidence of the same three elements of securities fraud that Defendants attacked in their motion to dismiss—a material misrepresentation or omission, scienter, and loss causation. (See Defs.' Mem. of Law in Supp. of Mot. for Summ. J. [Doc. No. 172] ("Defs.' SJ Mem.") at 28.) Specifically, they asserted that their use of bulk sales was neither an uncommon nor improper means of generating revenue and was well known by the market, that the alleged misrepresentations were non-actionable puffery or forward-looking statements, that they did not stand to profit from the alleged fraudulent conduct, and that the market did not attribute the earnings miss to channel stuffing. (See id. at 1–3.) Plaintiffs, on the other hand, argued that Defendants misled investors by recklessly failing to disclose sufficient information about their bulk sales practices and the potential risks of using such practices, that the financial guidance they provided was not supported by internal sales forecasts, and that STJ's third-quarter earnings miss resulted from the effects of their channel stuffing. (Pls.' Opp. to Defs.' Mot. for Summ. J. [Doc. No. 196] ("Pls.' SJ Opp.") at 1–2.)

On August 11, 2014, this Court issued its Order granting the motion in part, and denying it in part (the "Summary Judgment Order"). As for Count I, the Court found that Plaintiffs had created a genuine issue of material fact regarding their fraud claim to the extent that it was based on allegations related to channel stuffing. (Mem. Op. and Order dated Aug. 11, 2014 [Doc. No. 229] ("SJ Order") at 75.) However, the Court dismissed

Plaintiffs' claim to the extent that it was based on allegations of accounting fraud because Plaintiffs failed to establish loss causation.  (Id. at 73, 75.)  Specifically, the Court found that, although Plaintiffs described the allegedly improper accounting methods used by STJ, they did not attempt to explain what the associated risks were or how they materialized and negatively impacted earnings.  (Id. at 73.)  The Court also stated—in a footnote—that, to the extent that Plaintiffs' claims were based on the actual guidance provided for worldwide CRM sales for 2Q09, those claims failed because the evidence demonstrated that STJ met that guidance.  (Id. at 41 n.9.)  Count II, as a derivative claim, survived to the same extent as Count I survived.  (Id. at 77.)

### D.     Plaintiffs' Damages Expert and Defendants' Daubert Motion

Plaintiffs retained Dr. Atulya Sarin "to examine and discuss issues related to market efficiency, loss causation and damages" for STJ common stock purchased during the class period.  (Brooks Decl. [Doc. No. 246], Ex. 22 ¶ 8.)  In his Expert Report, which was served on Defendants on January 2, 2014,[3] Dr. Sarin concluded that:

- The October 6, 2009 disclosure that STJ's third quarter sales and earnings would be short of previously-issued guidance caused STJ's stock price to decline by 12.31 percent, after accounting for market and industry factors, thereby causing investors to incur economic losses;

- The evidence shows that the third quarter miss that caused STJ's October 6, 2009 market-adjusted price decline was substantially related to Plaintiffs' contentions in this matter; [and]

---

[3]     According to Plaintiffs, although Dr. Sarin's Report is dated December 30, 2013, it was served on Defendants on January 2, 2014. (Pls.' Opp. to Defs.' Mot. for Leave to File Mot. to Decertify the Class [Doc. No. 383] at 4 n.3.)

- An event study can be used to provide the jury with a flexible framework to calculate recoverable damages in this case based on the market adjusted price[] decline that occurred on October 6, 2009.

(Id. ¶ 10.) He noted that "[f]or the purpose of [his] analysis, [he] assumed that Plaintiffs will be able to prove their factual contentions." (Id. ¶ 20.) Dr. Sarin also submitted a Rebuttal Report addressing the report of Defendants' damages expert, Dr. Allan Kleidon, on May 15, 2014, (see id., Ex. 23), and was deposed on July 3, 2014, (see Stilson Decl. [Doc. No. 235], Ex. 35 at 1).

On September 5, 2014, Defendants filed a motion to exclude Dr. Sarin's opinions and testimony pursuant to Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993). (Defs.' Mot. to Exclude the Testimony and Opinions of Pls.' Expert Atulya Sarin, Ph.D [Doc. No. 232].) Defendants argued that Dr. Sarin's testimony is unreliable and misleading because he failed to disaggregate the impact of company-specific factors other than the alleged fraud on the decline in STJ's stock price on October 6, 2009. (Defs.' Mem. of Law in Support of Mot. to Exclude the Testimony and Opinions of Pls.' Expert Dr. Atulya Sarin, Ph.D [Doc. No. 234] at 1–2, 17–26.) They also argued that his opinion is flawed because he failed to analyze "what the market understood to be the causes of the miss," (id. at 28), and because his alternative methods for allowing the jury to apportion a part of the decline to other factors are improper, (see id. at 28–31). That motion is pending.

E. **Defendants' Motion for Leave to File Motion to Decertify the Class**

On November 7, 2014—the same day on which the parties argued their Daubert motions—Defendants filed their Motion for Leave to File Motion to Decertify the Class

6

("Motion for Leave"). Defendants simultaneously filed their proposed underlying Motion to Decertify the Class [Doc. No. 376] and supporting memorandum [Doc. No. 378]. Plaintiffs filed an opposition to Defendants' Motion for Leave [Doc. No. 383], and the Motion was heard via teleconference on November 26.

## II. DISCUSSION

Defendants' Motion for Leave is based on Rule 23 of the Federal Rules of Civil Procedure, as well as Local Rule 16.3. Pursuant to the former, "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Pursuant to the latter, which is derived from Federal Rule 16(b)(4), "[a] party that moves to modify a scheduling order must . . . establish good cause for the proposed modification." D. Minn. LR 16.3(b)(1).

Here, Defendants argue that, since the Court certified the class in October 2012, three developments have occurred that call into question the appropriateness of class certification: (1) the U.S. Supreme Court's decision in Comcast Corp. v. Behrend, 133 S. Ct. 1426 (2013); (2) the submission of Dr. Sarin's expert reports; and (3) the issuance of the Summary Judgment Order. (Defs.' Mem. of Law in Support of Mot. for Leave to File Mot. to Decertify the Class [Doc. No. 375] ("Defs.' Leave Mem.") at 1.) More specifically, Defendants argue that, in light of the Court's Summary Judgment Order dismissing certain of Plaintiffs' theories of liability, Dr. Sarin's methodology for calculating damages no longer comports with the Rule 23(b)(3) requirements enunciated in Comcast. (See id. at 5–6.) Defendants argue that these "changed circumstances" require that the Court revisit its certification order pursuant to Rule 23(c)(1)(C) and that

they constitute good cause under Local Rule 16.3 for amending the scheduling order in this case. (Id.)

Plaintiffs, on the other hand, argue that Defendants' Motion for Leave should be denied because Defendants lack good cause for amending the scheduling order. (Pls.' Opp. to Defs.' Mot. for Leave to File Mot. to Decertify the Class [Doc. No. 383] ("Pls.' Opp.") at 3.) Specifically, they assert that Defendants' Motion is untimely and prejudicial. (Id.) They also contend that Defendants' Motion should be denied as futile. (See id.)

The Court finds that granting Defendants' Motion is improper under either Local Rule 16.3 or Rule 23. Defendants' belated filing of their Motion for Leave demonstrates a lack of diligence, and granting such a motion so close to trial would cause undue prejudice to Plaintiffs. Given the importance of this issue, however, the Court recognizes the benefit of creating a full record and might tolerate Defendants' delay if there were any reason to revisit the issue of class certification. There is no such reason. Therefore, the Court denies Defendants' Motion for Leave not only for lack of good cause, but also on grounds of futility.

### A.   Diligence and Prejudice

In order to demonstrate good cause under Local Rule 16.3 for seeking leave to bring a motion outside of a scheduling order's deadlines, the moving party must demonstrate that it was diligent in attempting to meet those deadlines. Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716–17 (8th Cir. 2008) (internal citations and quotation marks omitted). Although the moving party's diligence is the "primary measure of good

cause," a court may also consider the prejudice to the nonmoving party that would result from modification of the scheduling order. Id. ("While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor [under Rule 16(b)], generally, we will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines."). Whether to grant a motion under this Rule, however, is within the Court's discretion. See Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001) (stating that, even when a moving party makes the requisite showing under Rule 16(b), "the district court retains discretion as to whether to grant the motion").

The deadline for filing dispositive motions in this case, as stated in the scheduling order, was October 15, 2013. (Third Am. Pretrial Scheduling Order [Doc. No. 126] at 4.) Defendants contend that they have good cause for filing a motion for class decertification over one year after that deadline passed because the basis for their motion—i.e., the combination of Comcast, Dr. Sarin's reports, and the Summary Judgment Order—was not ripe until now. (Defs.' Leave Mem. at 8.) They also argue that they have good cause because the motion for decertification may eliminate the need for "a lengthy and complex trial." (Id.)

Plaintiffs, on the other hand, argue that Defendants have demonstrated a lack of diligence because they had ample—earlier—opportunities to assert the issues they are now raising. (Pls.' Opp. at 4–5.) In particular, Plaintiffs note that Comcast was issued in March 2013; Defendants received Dr. Sarin's Report in January 2014; the Court issued its Summary Judgment Order in August; and Defendants attacked other aspects of Dr.

9

Sarin's opinions through a Daubert motion filed in September 2014.  (Id.)  Plaintiffs argue that Defendants had all of the information they needed to bring their Motion once Dr. Sarin issued his initial report, because they had already sought summary judgment on grounds ultimately granted in the Summary Judgment Order.  (Id. at 8.)  At the very least, Plaintiffs assert, Defendants could have raised the issue in their Daubert motion, which was filed four weeks after the Summary Judgment Order was issued.  (Id.)  In addition, Plaintiffs argue that the significant time and resources that would be required to brief the underlying motion for decertification would significantly impact their preparation for trial, which is scheduled to begin on February 23, 2015.  (See id. at 19–22.)

The Court finds that Defendants have not demonstrated good cause sufficient to permit modification of the scheduling order in this case.  Importantly, as discussed in more detail below, the Court finds that its Summary Judgment Order did not change the landscape in this case in the manner suggested by Defendants.  Accordingly, Defendants had the information they needed to bring their motion for decertification—or at least to notify the Court and Plaintiffs that they intended to seek leave to bring such a motion—in January 2014.  Yet, they waited ten months to do so.

However, even if the Summary Judgment Order had called into question Dr. Sarin's opinion in the manner suggested by Defendants, Defendants failed to act diligently.  Rather than raising the issue immediately after receiving the Summary Judgment Order, or even simultaneously with their September 5 Daubert motion regarding Dr. Sarin's opinion, they waited an additional two months.  At that time, there were just a few months remaining until the first day of the parties' multi-week trial.

10

Under these circumstances, the Court finds Defendants' delay to be inexplicable and prejudicial.

### B. Futility

Defendants argue that, because the issue of class certification can be raised at any time prior to judgment—if the circumstances so warrant—the Court should grant them leave to file their Motion to Decertify the Class regardless of Local Rule 16.3's good cause requirement. (See Pls.' Leave Mem. at 4, 7.) As discussed above, Defendants point to three events that have occurred since the Court's Class Certification Order that purportedly mandate reconsideration of certification: the Supreme Court's issuance of Comcast, Defendants' receipt of Dr. Sarin's reports, and this Court's ruling on summary judgment.

The Supreme Court issued its opinion in Comcast in March 2013. In that case, subscribers to Comcast's cable television services filed a class action alleging that Comcast's "clustering strategy" violated antitrust laws. 133 S. Ct. at 1430. Comcast's clustering strategy was achieved "by acquiring competitor cable providers in [a] region and swapping their own systems outside the region for competitor systems located in the region." Id. In ruling on the subscribers' motion for class certification under Rule 23(b)(3), the district court held that the subscribers had to show that the existence of individual injury caused by the alleged violations—i.e., "antitrust impact"—was capable of proof through evidence common to the class, and that the resulting damages were measurable on a class-wide basis. Id. (citation omitted). The subscribers proposed four theories of antitrust impact that each allegedly increased the subscribers' cable

11

subscription rates, as well as a damages calculation based on their expert witness' regression model. Id. at 1430–31. "[T]he model did not isolate damages resulting from any one theory of antitrust impact." Id. at 1431 (citation omitted).

Of the four theories of antitrust impact proposed by the subscribers, the district court accepted only one as capable of class-wide proof. Id. at 1430–31. Notably, "[t]he [d]istrict [c]ourt did not hold that the three alternative theories of liability failed to establish antitrust impact." Id. at 1431 n.3. The district court went on to find that the damages resulting from the accepted antitrust impact theory could be calculated on a class-wide basis and, accordingly, certified the class. Id. at 1431. Comcast appealed, arguing that class certification was improper because the regression model used to calculate damages failed to assign damages resulting from the only remaining theory of antitrust impact. Id. The Third Circuit Court of Appeals affirmed the district court's decision. Id.

> In reversing the Third Circuit, the Supreme Court held:
>
> If [the subscribers] prevail on their claims, they would be entitled only to damages resulting from . . . the only theory of antitrust impact accepted for class-action treatment by the District Court. It follows that a model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3).

Id. at 1433. Because the damages model relied upon by the subscribers' damages expert calculated damages based on the difference between the actual rates paid by the subscribers and the rates that they would have paid had there been no antitrust violations,

the Court found that "[t]here is no question that the model failed to measure damages resulting from the particular antitrust injury on which [Comcast's] liability in [the] action [was] premised." Id. at 1433–34.  Rather, the subscribers had used "a methodology that identifie[d] damages that [were] not the result of the wrong" and, accordingly, had not satisfied Rule 23(b)(3).  Id. at 1434–35.

In their Motion for Leave, Defendants argue that Dr. Sarin's methodology for calculating damages violates Comcast because it assumes that Plaintiffs will prove Defendants' liability for every alleged misstatement, even though the Court's Summary Judgment Order dismissed Plaintiffs' claim to the extent that it was based on allegations of accounting fraud (i.e., that STJ's revenues were misstated) and false guidance for 2Q09.  (See Defs.' Leave Mem. at 2–6.)  More specifically, Defendants argue:

> [T]his Court's Summary Judgment Order significantly narrowed Plaintiffs' liability theory.  Meanwhile, Plaintiffs' expert Dr. Sarin has made no effort to disaggregate the effects of each of Plaintiffs' theories of liability, let alone each individual alleged misrepresentation.  These two events establish that Plaintiffs' damages theory is not adequately tied to their liability theory, and as a result, common issues no longer predominate over the individual ones in contravention of Comcast.

(Id. at 5–6 (citations omitted).)  Defendants assert that, if Plaintiffs prevail and are permitted to use Dr. Sarin's damages methodology, class members will be compensated for losses that are not attributable to the fraud.  (Id. at 6–7.)

In their underlying Motion to Decertify, Defendants make the same argument regarding the "three intervening developments" of Comcast, Dr. Sarin's reports, and the

13

Summary Judgment Order.[4]  (Defs.' Mem. of Law in Support of Mot. to Decertify the Class [Doc. No. 378] ("Defs.' Decert. Mem.") at 1.)  In their discussion regarding the inaccuracy of Dr. Sarin's damages methodology, Defendants argue that because each of the dismissed statements must have had an impact on share price, that impact must be accounted for and removed from the damages calculation, which Dr. Sarin did not do.  (See id. at 13–18.)  Elaborating on their theory, Defendants seem to focus on a different point—that Dr. Sarin's use of a constant inflation factor in his backcasting methodology

---

[4]   Defendants also assert in a footnote in their underlying motion papers that the Supreme Court's decision in Halliburton Co. v. Erica P. John Fund, Inc. (Halliburton II), 134 S. Ct. 2398 (2014), is another intervening factor that favors decertification.  (Defs.' Mem. of Law in Support of Mot. to Decertify the Class [Doc. No. 378] at 8 n.4.)  Defendants argue that the case "makes clear that Plaintiffs have the ultimate burden of proof to show each and every challenged statement was materially misleading."  (Id.)

At issue in Halliburton II were the following questions:  (1) the continued viability of the Supreme Court's previous holding that "securities fraud plaintiffs can in certain circumstances satisfy the reliance element of a Rule 10b-5 action by invoking a rebuttable presumption of reliance, rather than proving direct reliance on a misrepresentation," and (2) whether defendants may try to rebut that presumption at the class certification stage by demonstrating a lack of price impact.  134 S. Ct. at 2408 (citing Basic Inc. v. Levinson, 485 U.S. 224, 246 (1988)).  The Court summarized its previous holding that, in order for the presumption of reliance to apply, a plaintiff must prove:  "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed."  Id. (citing Basic Inc., 485 U.S. at 248 n.27).  The Court declined to eliminate or modify the availability of that presumption, but it did determine that defendants may try to defeat the presumption before class certification.  Id. at 2417.

Defendants' reliance on this case as an "intervening factor" requiring this Court to revisit class certification is misplaced.  Rather, the Supreme Court merely confirmed a twenty-five-year-old decision stating that the plaintiffs in a securities fraud action have the burden to prove that any alleged misstatement was materially misleading in order to have the benefit of the presumption of reliance.  And, its "new" holding—i.e., that a defendant may attempt to defeat the presumption prior to class certification—has no bearing on the issues presently before this Court.

14

does not comport with Plaintiffs' theory of liability because it does not account for the purported increasing levels of risk associated with the increasing inventory build and, accordingly, does not recognize that the effects on the share price would be different at different times.  (Id. at 18–19.)  In other words, Defendants argue that—under Plaintiffs' theory—because investors would have discounted the share price according to the amount of risk at a given time, the price inflation paid by a purchaser at the beginning of the class period is less than the price inflation paid by a purchaser at the end of the class period when the risk was greater due to the higher inventory build.  (See id. at 20–21.)  Defendants contend that, contrary to Plaintiffs' theory, Dr. Sarin's methodology treats both purchasers the same.  (Id. at 21.)

In response to Defendants' Motion for Leave, Plaintiffs argue that the Court's Summary Judgment Order had no effect on Dr. Sarin's opinion because Plaintiffs' allegations of accounting fraud were dismissed for lack of loss causation.  (Pls.' Leave Opp. at 2.)  In other words, the Court dismissed those allegations "for lack of any damages connected to the October 6, 2009 decline in the price of STJ's stock."  (Id. at 11 (emphasis omitted).)  According to Plaintiffs:

> If those damages are non-existent, it is self-evident that any damage award entered on the basis of the October 6 stock drop will not, as a matter of law (or at least as the law of this case), include a single dime of damages that could be attributed to the accounting allegations. . . . If there are no damages, there is no risk of a [c]lass member being unjustly compensated by being reimbursed for losses unrelated to the fraud.  If such a risk does exist, then the summary judgment order is incorrect and would need to be revisited.

15

(Id. (citations omitted).)  In addition, Plaintiffs argue, the damages claims are solely based on the stock drop following the pre-announcement of the 3Q09 earnings miss, so no portion of any damage award will be tied to the allegation that the 2Q09 guidance was false.  (Id. at 12.)

Plaintiffs further argue that, unlike in Comcast, there is no reason to believe in this case that the determination of damages suffered by each class member will predominate unless a different damages model is used.  (Id. at 14.)  Rather, Plaintiffs contend that, "regardless of the model used, damages will continue to be calculated for all [c]lass members based on the dates of their purchases and sales of STJ stock on the open market."  (Id.)  Plaintiffs assert that Defendants are really challenging the backcasting methodology used by Dr. Sarin to calculate damages, which "may provide fodder for cross-examination, but . . . provide[s] no ground for rejection of Dr. Sarin's methodology, much less questioning the continued suitability of this case for class treatment."  (Id. at 17.)

The Court is not persuaded by Defendants' arguments.  When Defendants stipulated to class certification in October 2012, they conceded that damages in this type of case are measureable on a class-wide basis.  And, they still agree that damages may be calculated on a class-wide basis in this case.  (See Defs.' Decert. Mem. at 22.)  They simply disagree with Dr. Sarin's methodology.  However, the Summary Judgment Order did not change the circumstances of this lawsuit such that Dr. Sarin's methodology is now improper under Comcast.

16

First, this Court's Summary Judgment Order dismissed the accounting fraud allegations for lack of loss causation.[5] In other words, Plaintiffs failed to demonstrate that the alleged fraudulent accounting activities caused any damages. This situation is vastly different from Comcast, where the theories of injury that were removed from the class-action lawsuit—and that had been incorporated into the damages calculation—had caused damages. Accordingly, unlike in Comcast, removal of the allegations in this case does not require the removal of any associated damages from the damages calculation. Dr. Sarin cannot remove damages that do not exist.

Second, the allegations that 2Q09 guidance was false were dismissed because the actual results for 2Q09 were within guidance. Accordingly, the statements providing guidance and actual results for 2Q09 did not independently cause damages—under the theory of securities fraud that remains in this case, the channel stuffing was on-going during the class period, and there was no interruption due to a corrective disclosure or materialization of a risk when the 2Q09 results were announced. Therefore, Dr. Sarin need not have treated those statements as separate events in his damages calculation.

Third, the real essence of Defendants' argument is that Dr. Sarin improperly calculated the inflated value of the stock over time due to the alleged, undisclosed, fraud—not that events during the class period independently caused damages.

---

[5]  As discussed in more detail in the Summary Judgment Order, "[l]oss causation in a securities fraud case is analogous to the common law's requirement of proximate causation." McAdams v. McCord, 584 F.3d 1111, 1114 (8th Cir. 2009) (citation omitted). In other words, a plaintiff must "show that the defendant's fraud—and not other events—caused the security's drop in price." Schaaf v. Residential Funding Corp., 517 F.3d 544, 550 (8th Cir. 2008) (citation omitted).

Defendants will have a full opportunity to cross examine Dr. Sarin on his calculation of the inflated value, but regardless, the jury will be able to calculate damages on a class-wide basis.

For these reasons, Dr. Sarin's damages methodology does not fail to match Plaintiffs' liability theory as a result of the Summary Judgment Order and does not contravene Comcast or Rule 23(b)(3).  Rather, Defendants' criticisms of Dr. Sarin's methodology really go to the accuracy of his backcasting calculations and not to the appropriateness of the method's ability to determine damages on a class-wide basis. While Defendants may challenge Dr. Sarin's methodology through cross-examination at trial, their disagreement is not a valid reason for decertification.

### III.   ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Leave to File Motion to Decertify the Class [Doc. No. 373] is **DENIED**; and

2. Defendants' Motion to Decertify the Class [Doc. No. 376] should be **TERMED AS MOOT.**

Dated:  December 8, 2014                              s/Susan Richard Nelson
                                                     SUSAN RICHARD NELSON
                                                     United States District Judge